IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SURFSAND RESORT, LLC, an
Oregon limited liability
company,

      Plaintiff,

v.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, an Ohio
company, and HARLEYSVILLE
INSURANCE COMPANY, a
Pennsylvania company,

      Defendants.

3:17-cv-00866-BR

OPINION AND ORDER


**JAMES LEE GUSE**
Barker Martin
1500 S.W. First Avenue
Suite 980
Portland, OR 97201
(503) 796-9806
      Attorneys for Plaintiff

**DIANE L. POLSCER**
**BRIAN C. HICKMAN**
Gordon & Polscer, LLC
9755 S.W. Barnes Road
Suite 650
Portland, OR 97225
(503) 242-2922

**KAYLEIGH T. KEILTY**
**PATRICIA M. LAMBERT**
Pessin Katz Law, P.A.
901 Dulaney Valley Road
Suite 500
Towson, MD 21204
(410) 339-6772

        Attorneys for Defendants

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff's Motion (#32) for Summary Judgment and Defendants' Cross-Motion (#36) for Summary Judgment. The Court concludes the record is sufficiently developed such that oral argument would not be helpful to resolve these Motions. For the reasons that follow, the Court **DENIES** Plaintiff's Motion, **GRANTS** Defendants' Motion, and **DISMISSES** this matter.


## BACKGROUND

The following facts are taken from Plaintiffs' Complaint and the parties' filings related to their Motions for Summary Judgment.

On September 14, 2015, Defendants Nationwide Mutual Fire Insurance Company and Harleysville Insurance Company issued to Plaintiff Surfsand Resort, LLC, a Standard Flood Insurance Policy (SFIP) pursuant to the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001(a). The policy period was from September 14, 2015,

through September 14, 2016. The policy "insure[d] [Plaintiff] against direct physical loss by or from flood." Joint Statement of Agreed Facts at ¶ 5. The policy, however, imposed "restricted coverage on building items located in a 'basement,' which it define[d] as '[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.'" Joint Statement of Agreed Facts at ¶ 6 (quoting Ex. 1, Art. II(B)(5)).

The policy also provided "'**[w]ithin 60 days after the loss**, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you.'" Joint Statement of Agreed Facts at ¶ 8 (quoting Ex. 1, Art. VII(J)(4)) (emphasis in original). Finally, the policy provided:

> "If we reject your proof of loss in whole or in part you may: (a) Accept such denial of your claim; (b) Exercise your rights under this policy; or (c) File an amended proof of loss as long as it is filed within 60 days of the date of the loss."

Joint Statement of Agreed Facts at ¶ 9 (quoting Ex. 1, Art. VII(M)(2)).

On December 11, 2015, the tidal waters of the Pacific Ocean overflowed and damaged the bottom level of hotel rooms at the Surfsand Resort in Cannon Beach, Oregon, which Plaintiff owned.

On December 22, 2015, Nationwide received its first notice of loss from Plaintiff.

"The claim was assigned to Colonial Claims Corporation who

assigned Jacob Valencia to serve as the independent adjuster."

Joint Statement of Agreed Facts at ¶ 13.  Valencia advised

Plaintiff:

> I am the eyes and ears of the insurance company.
> I cannot bind them.  I cannot tell you what amount
> of money you will be paid.  My job is to make
> assessment for the insurance company of the damage
> under the policy coverage based on my knowledge
> and experience.  My assessment will be subject to
> the insurance company's approval.
>
>                    * * *
>
> Your insurance policy is a written contract with
> stated terms and conditions.  Please comply with
> them and specifically we want to note you should
> file a Proof of Loss within sixty days from the
> date of your event.  Please see VII.  General
> Conditions, p12 of 19 for details on the proof of
> loss.

Joint Statement of Agreed Facts at ¶¶ 13-14.

On May 4, 2016, Plaintiff executed a signed and sworn Proof

of Loss in the amount of $98,765.08.  Joint Statement of Agreed

Facts at ¶ 17.

At some point before June 2, 2016, Plaintiff requested the

Federal Emergency Management Agency (FEMA) to grant Plaintiff a

waiver of the 60-day Proof of Loss deadline contained in the SFIP

with respect to Plaintiff's Proof of Loss in the amount of

$98,765.08.

On June 2, 2016, FEMA granted Plaintiff a limited waiver of

the 60-day Proof of Loss deadline as follows:

> Based on the information you submitted, your
> request for a waiver of the 60 day Proof of Loss

policy provision is approved.  This limited waiver
is for *only the amount of the loss and scope of
the damages outlined in this request* and otherwise
does not waive the proof of loss or any other
requirement of the [SFIP] and makes no other
comment because of lack of information.

Decl. of Brian C. Hickman, Ex. 4 at 2 (emphasis added).

On June 3, 2016, Nationwide sent Plaintiff a coverage-
determination letter enclosing a check for $98,765.08 and
advising Plaintiff that it was denying coverage for

damages to the insured contents and all
non-covered items located in the basement pursuant
to the SFIP and quoted the relevant policy
language.  The letter also explained the appeal
process and provisions related to filing suit
against Nationwide.

Joint Statement of Agreed Facts at ¶ 19.[1]

On July 14, 2016, Plaintiff appealed Nationwide's denial of
coverage for damage to the "non-covered items located in the
basement" to FEMA.  Specifically, Plaintiff disputed Nationwide's
determination that Plaintiff's property had a basement within the
meaning of the SFIP.

On October 19, 2016, FEMA advised Plaintiff that an
inspection by John Garner, an Oregon licensed engineer, was
"necessary because the elevations of the lowest floor and
adjacent grades of your building are unclear."  Hickman Decl.,
Ex. 7 at 1.

On December 29, 2016, Gardner issued his Engineering Report

---

[1] The June 3, 2016, letter is not in the record.

in which he concluded:

> It is my opinion that a reasonable interpretation of ground level should involve a natural drainage runoff. Simply considered, if a portion of a building would accumulate water in rains unless water is pumped or drained away, it is reasonably below ground level. Thus, if all areas of the floor are below ground level on all sides, the floor would hold water unless it were physically drained through plumbing or storm drains. Conversely, if an area of the floor is above ground level, then it would not hold water and water would drain away naturally.

> * * *

> In this particular case, the lower floor units are blocked from any natural drainage by the grassy area between them and the beach. The only way runoff can drain away is via French drains on the patios. The lower level below ground level on all sides, and the nearest lower ground is more than 25 feet away, outside the sea wall. The grassy area and sea wall block any natural positive drainage away from the interior, thus it is reasonable to conclude that the interior units are below ground level on all sides.

> Based upon a review of the available data, it is my opinion that the lower floor of the Surfsand Resort Beachfront Building is below ground level on all sides and thus does [in] fact meet the definition of a basement as denied in the Standard Flood Insurance Policy. This floor should be considered a basement for policy purposes, including Units 1101-1112, the hallway, and the storage area.

Decl. of James Guse, Ex. 7 at 6-7.

On March 23, 2017, Nationwide advised Plaintiff that it had reviewed Gardner's Report and that it was "upholding our denial of non-covered items in a basement as indicated in our letter of June 3, 2016." Guse Decl., Ex. 8 at 1.

On June 2, 2017, Plaintiff filed an action in this Court against Nationwide and Harleysville asserting claims for breach of insurance contract and negligence *per se*. Plaintiff seeks damages in the amount of $396,234.92, "which represents the amount of the covered loss denied by Defendants"; seeks attorneys' fees; and requests a jury trial.

On August 21, 2017, Defendants filed a Motion to Dismiss Count II of Plaintiff's Complaint and a Motion to Strike Jury Demand in which they sought an order dismissing Plaintiff's claim for negligence *per se*, request for attorneys' fees, and demand for a jury trial.

On October 16, 2017, the Court issued an Opinion and Order in which it granted Defendants' Motion to Dismiss and Motion to Strike Jury Demand.

On March 15, 2018, Plaintiff filed a Motion for Summary Judgment. On April 5, 2018, Defendants filed a Cross-Motion for Summary Judgment. The Court took the Motions under advisement on May 3, 2018.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R.

Civ. P. 56(a). The moving party must show the absence of a genuine dispute as to a material fact. *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary

judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


## DISCUSSION

Plaintiff moves for summary judgment on the ground that there is not any genuine dispute of material fact that the lowest level of the Surfsand Resort is not a basement within the meaning of the SFIP. According to Plaintiff, it is, therefore, entitled to coverage for damages in the amount of $396,234.92, "which represents the amount of the covered loss denied by Defendants."

Defendants, on the other hand, move for summary judgment on the ground that it paid Plaintiff $98,765.08, which is the amount of the only Proof of Loss that Plaintiff submitted to Defendants. Moreover, Plaintiff has never submitted a supplemental Proof of

Loss for the $396,234.92 that it now seeks in this action, and, therefore, Plaintiff has not satisfied a condition precedent of the SFIP. Defendants also contend the lowest level of the Surfsand Resort is a basement within the meaning of the policy, and, therefore, Plaintiff's requested damages are not covered under the policy.

## I.   National Flood Insurance Program

Congress enacted the NFIA in 1968 in response to the fact that flood disasters were creating personal hardships and economic distress that was "increasing [the] burden on the Nation's resources" and the exposure to flood losses was "growing." 42 U.S.C. § 4001(a). The NFIA created the National Flood Insurance Program (NFIP) under the administration of FEMA to "mak[e] flood insurance coverage available on reasonable terms and conditions." *Id. See also* 42 U.S.C. § 4011. Flood insurance under the NFIP is sold to qualified applicants either directly by FEMA or by private insurance companies known as "write-your-own" (WYO) Companies. 44 C.F.R. § 62.23. A WYO Company enters into a standardized agreement with FEMA that authorizes the WYO Company to issue flood insurance in its own name and assigns the WYO Company the responsibility for "the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program." 44 C.F.R. § 62.23(d). Nevertheless, the ultimate responsibility

for paying all claims remains with FEMA.  *See* 42 U.S.C.
§ 4017(a).

The NFIA regulations specify the required terms and
conditions of policies written under the NFIP.  For example, the
SFIP must advise the insured that FEMA is providing insurance
"under the terms of the National Flood Insurance Act of 1968 and
its Amendments, and Title 44 of the Code of Federal Regulations."
44 C.F.R. pt. 61, app. A(1), art. I.  The SFIP also must identify
the scope of coverage, the exclusions, the deductions, and the
general conditions applicable to coverage, adjustment, and
payment.  The SFIP must also include the following provision:

> This policy and all disputes arising from the
> handling of any claim under the policy are
> governed exclusively by the flood insurance
> regulations issued by FEMA, the National Flood
> Insurance Act of 1968, as amended (42 U.S.C.
> § 4001, et seq.), and Federal common law.[2]

44 C.F.R. pt. 61, app. A(1), art. IX.  WYO Companies cannot waive
or vary the terms or conditions of the SFIP without the express,
written consent of the Federal Insurance Administrator.  44
C.F.R. § 61.13(d).

In addition, the SFIP also must include the following
conditions and limitations for filing actions for claims under
SFIPs and for disputes arising out of the handling of any claim
under an SFIP:

---

[2] The SFIP at issue included all of the required language
identified above.

> You may not sue us to recover money under this
> policy unless you have complied with all the
> requirements of the policy. . . . This
> requirement applies to any claim that you may have
> under this policy and to any dispute that you
> may have arising out of the handling of any claim
> under the policy.

44 C.F.R. pt. 61, app. A(1), art. VII(R). *See also* 42 U.S.C.

§ 4072; 44 C.F.R. § 62.22.

"In short, [SFIP], claims under [SFIPs], and disputes

relating to the handling of claims under [SFIPs] are highly

regulated." *Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 622-23

(4th Cir. 2017). *See also Suopys v. Omaha Prop. & Cas.*, 404 F.3d

805, 809 (3d Cir. 2005)("Because any claim paid by a WYO Company

is a direct charge to the United States Treasury, strict

adherence to the conditions precedent to payment is required.")

(citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85

(1947); *Flick v. Liberty Mut.*, 205 F.3d 386 (9th Cir. 2000)

(strict compliance is applied to policies written by WYO

Companies under the NFIP because flood-loss claims are paid from

United States Treasury).

## II. Plaintiff failed to satisfy a condition precedent of the SFIP.

As noted, Defendants move for summary judgment on the ground

that Plaintiff has never submitted a supplemental Proof of Loss

for the $396,234.92 that it now seeks in this action. According

to Defendants, therefore, Plaintiff has not satisfied a condition

precedent of the SFIP, and, accordingly, Plaintiff may not bring

12 - OPINION AND ORDER

a claim for those damages.

It is undisputed that Plaintiff submitted to Defendants a
Proof of Loss on May 4, 2016, asserting a claim for $98,765.08.
As noted, however, the record does not reflect Plaintiff
submitted any supplemental or additional Proof of Loss to
Defendants for the $396,234.92 that it now seeks as damages.

The SFIP provides in relevant part:

> In case of a flood loss to insured property, *you
> must*:
>
> * * *
>
> 3.    Prepare an inventory of damage property
>       showing the quantity, description, actual
>       cash value, and amount of loss.  Attach all
>       bills, receipts, and related documents.
>
> 4.    Within 60 days after the loss, send us a
>       proof of loss, which is your statement of the
>       amount you are claiming under the policy
>       signed and sworn to by you, and which
>       furnishes us with the following information:
>
> * * *
>
>       f.    Specifications of damaged buildings and
>             detailed repair estimates; [and]
>
> * * *
>
>       i.    The inventory of damaged property
>             described in J.3 above.

Hickman Decl., Ex. 1 at Art VII(J)(4)(emphasis added).  *See also*
44 C.F.R. § 61, App. A(2), Art. VII(J)(4)(same).  The SFIP
provides if the insurer rejects the Proof of Loss "in whole or in
part," the insured "may":

13 – OPINION AND ORDER

> a.  Accept such denial of your claim;
>
> b.  Exercise your rights under this policy; or
>
> c.  File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

Hickman Decl., Ex. 1 at Art VII(M)(2).

The Ninth Circuit and other courts have held a timely signed and sworn Proof of Loss is a condition precedent to an insured obtaining benefits under an SFIP policy. *See Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 659-60 (9th Cir. 2002) (concluding the plaintiff failed to satisfy the condition precedent of the SFIP when he did not file a proof of loss). *See also Dickson v. Am. Bankers Ins. Co. of Fl.*, 739 F.3d 397, 399 (8th Cir. 2014)("[T]he proof of loss requirement is a regulatory limit on the disbursement of funds through a federal insurance program; as such 'it is to be strictly construed [for it] serves as a condition precedent to recovery under the SFIP.'" (quoting *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773 (8th Cir. 2013)); *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013) ("Given that it is the government's liability at stake in any suit against a WYO insurer, compliance with the proof-of-loss provision serves as a "condition[ ] precedent to a waiver by the federal government of its sovereign immunity.").

Although the Ninth Circuit has not addressed the issue, other courts have held an insured must submit an additional or

supplemental proof of loss as a condition precedent "to recover
an additional amount on a preexisting claim under a[n] SFIP."
*Cummings v. Fidelity Nat. Indem. Ins. Co.*, 636 F. App'x 221, 223–
24 (5th Cir. 2016). *See also Dickson*, 739 F.3d at 399 ("a signed
and sworn proof of loss claims only the amounts listed in those
forms, and the insured must timely file an additional proof of
loss to claim any additional amount of money."). As the Fifth
Circuit explained in *Cummings*,

> a policy of "'insurance issued pursuant to a
> federal program must be strictly construed and
> enforced.'" *Monistere*, 559 F.3d at 394 (quoting
> *Gowland*, 143 F.3d at 954). "Because insurance
> companies act as 'fiscal agents' of the government
> under the National Flood Insurance Program, all
> policy awards deplete federally allocated funds."
> *Id*. (quoting *In re Estate of Lee*, 812 F.2d 253,
> 256 (5th Cir. 1987)). Accordingly, "'not even the
> temptations of a hard case' will provide a basis
> for ordering recovery contrary to the terms of a
> regulation, for to do so would disregard 'the duty
> of all courts to observe the conditions defined by
> Congress for charging the public treasury.'" *Id*.
> (quoting *Forman v. Fed. Emergency Mgmt. Agency*,
> 138 F.3d 543, 545 (5th Cir. 1998)). *See generally
> Richmond Printing LLC v. Dir. Fed. Emergency Mgmt.
> Agency*, 72 F. App'x 92, 97 (5th Cir. 2003)(citing
> *Kerr v. FEMA*, 113 F.3d 884 (8th Cir. 1997))
> (finding that completion of the proof of loss is
> the insured's own responsibility and "any reliance
> on statements made by the adjuster that
> contradicted the terms of the SFIP was
> unreasonable as a matter of law; the insured had a
> duty to read the policy and acted unreasonably in
> relying on adjusters provided only as a
> 'courtesy'"); *see also Gowland*, 143 F.3d at 955
> (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S.
> 380, 385 (1947))("Requiring [insured parties] to
> turn square corners when dealing with the Treasury
> 'does not reflect a callous outlook. It merely
> expresses the duty of all courts to observe the

> conditions defined by Congress for charging the
> public treasury.'").

636 F. App'x at 224.

Plaintiff does not dispute it failed to file a supplemental or additional proof of loss seeking the additional damages of $396,234.92 that it now seeks. Plaintiff, however, asserts it provided all "of the documentation regarding damaged areas . . . and its contents" to claims adjuster Jacob Valencia who "specifically excluded items that he considered to be in a basement." Decl. of Ted Stark at ¶ 4. Plaintiff points out that Valencia advised Plaintiff in February and April 2016 (before Plaintiff filed the May 2016 proof of loss) that "a Proof of Loss was only to act as a 'minimum' of items that are flood damaged. He further indicated that any 'covered, omitted or reasonable cost difference' could be addressed with a Claim for Additional Payment (CAP)." *Id*. Plaintiff argues Valencia was acting as Defendants' agent, and, therefore, Valencia's refusal to submit all of the damages either waived the requirement or absolved Plaintiff of the responsibility to submit a supplemental proof of loss as to the damages that Plaintiff now seeks. Arguments similar to those made by Plaintiff, however, have been rejected by various courts.

For example, the Eighth Circuit explained in *Dickson*:

> The SFIP defines the proof of loss as the
> insureds' signed and sworn "statement of the
> amount [they] are claiming under the policy."

44 C.F.R. pt. 61 app. A(1), art. VII(J)(4).
Independent insurance adjusters may assist the
insureds by providing or preparing this proof of
loss form, but the SFIP is clear that even with
such assistance the insureds must use their own
judgment concerning the amount of loss they claim.

* * *

Among the significant SFIP provisions concerning
the proof of loss requirement is a rule that "[i]n
completing the proof of loss, [the insureds] must
use [their] own judgment concerning the amount of
loss and justify that amount."  44 C.F.R. pt. 61
app. A(1), art. VII(J)(5).  While insurance
adjusters may assist with preparing the proof of
loss form, they do so as "a matter of courtesy
only" and insureds are ultimately responsible for
ensuring their claim is timely filed.  *Id.*, art.
VII(J)(7).  Thus as a matter of law, the
[plaintiffs] were the only parties responsible for
ensuring compliance with the proof of loss
requirement, including the determination of the
"amount of loss."

* * *

[T]he SFIP requires insureds to use their own
judgment to determine the amount of loss they
claim.  It was therefore solely the [plaintiffs']
own responsibility to file a timely proof of loss
for any amount they believed was covered by the
policy.

*Dickson*, 739 F.3d at 399-400.  Similarly, in *DaCosta* the court

noted

FEMA must provide express written consent . . . to
waive any of the requirements outlined in [an]
SFIP.  The SFIP's waiver provision states, "[t]his
policy cannot be changed nor can any of its
provisions be waived without the express written
consent of the Federal Insurance Administrator.
No action we take under the terms of this policy
constitutes a waiver of any of our rights."
44 C.F.R. pt. 61, App. a(1), Art. VII(D).

17 – OPINION AND ORDER

> The SFIP's stringent waiver provision reflects the
> fact that private insurers are "fiscal agents of
> the United States," 42 U.S.C. § 4071(a)(1), as
> opposed to general agents. *See McGair*, 693 F.3d
> at 96. Thus, consistent with their duty to
> strictly enforce the SFIP, private insurance
> companies can "[vary] the terms of a policy only
> with FEMA's express written consent." *Jacobson*,
> 672 F.3d at 175. . . . [T]he SFIP "explicitly
> preclude[s] oral waiver or waiver by conduct.

730 F.3d at 87.

In *Dickson* the court also rejected the plaintiffs' assertion that their claims adjuster engaged in misconduct when it inaccurately advised them about the amount of their proof of loss:

> The adjuster explained . . . the [plaintiffs]
> could "always submit a supplemental claim for
> additional damages." The [plaintiffs] were thus
> alerted to the potential need for filing a
> supplemental claim. . . . Moreover, the SFIP
> provides clear directives that the [plaintiffs]
> needed to file a proof of loss for their claim
> . . . . The responsibility to ensure compliance
> with the prerequisites for filing suit lay with
> the [plaintiffs].

*Id*. at 401.

This Court adopts the reasoning of *Cummings, DaCosta,* and *Dickson* and concludes Plaintiff's submission of an additional or supplemental proof of loss is a condition precedent to recover an additional amount on a preexisting claim under an SFIP. The Court also concludes Valencia's alleged refusal to submit a claim for damages related to the part of Plaintiff's property that he believed to be a basement is insufficient to waive the

supplemental proof-of-loss requirement because Plaintiff had an independent duty to determine the amount of its own loss; FEMA did not waive the SFIP requirement to submit a supplemental proof of loss; and Valencia, in fact, informed Plaintiff that "any covered, omitted or reasonable cost difference could be addressed with a Claim for Additional Payment." Thus, on this record the Court concludes Plaintiff failed to comply with the condition precedent for seeking additional damages within the time required by the SFIP and FEMA. The Court, therefore, grants that portion of Defendants' Motion for Summary Judgment based on Plaintiff's failure to file a supplemental proof of loss.

In addition, because the Court has concluded Plaintiff failed to satisfy a condition precedent before bringing this action, the Court does not have the authority to decide whether the lower level of Plaintiff's property is a basement within the meaning of the SFIP, and, therefore, the Court does not express any opinion on that issue. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment.


**<u>CONCLUSION</u>**

For these reasons, the Court **DENIES** Plaintiff's Motion (#32) for Summary Judgment, **GRANTS** Defendants' Cross-Motion (#36) for

Summary Judgment, and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 28th day of June, 2018.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SURFSAND RESORT, LLC, an
Oregon limited liability
company,

       Plaintiff,

v.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, an Ohio
company, and HARLEYSVILLE
INSURANCE COMPANY, a
Pennsylvania company,

       Defendants.

3:17-cv-00866-BR

OPINION AND ORDER

JAMES LEE GUSE
Barker Martin
1500 S.W. First Avenue
Suite 980
Portland, OR 97201
(503) 796-9806
       Attorneys for Plaintiff

DIANE L. POLSCER
BRIAN C. HICKMAN
Gordon & Polscer, LLC
9755 S.W. Barnes Road
Suite 650
Portland, OR 97225
(503) 242-2922

1 - OPINION AND ORDER

**KAYLEIGH T. KEILTY**
**PATRICIA M. LAMBERT**
Pessin Katz Law, P.A.
901 Dulaney Valley Road
Suite 500
Towson, MD 21204
(410) 339-6772

Attorneys for Defendants

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff's Motion (#32) for Summary Judgment and Defendants' Cross-Motion (#36) for Summary Judgment.  The Court concludes the record is sufficiently developed such that oral argument would not be helpful to resolve these Motions.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion, **GRANTS** Defendants' Motion, and **DISMISSES** this matter.

<u>BACKGROUND</u>

The following facts are taken from Plaintiffs' Complaint and the parties' filings related to their Motions for Summary Judgment.

On September 14, 2015, Defendants Nationwide Mutual Fire Insurance Company and Harleysville Insurance Company issued to Plaintiff Surfsand Resort, LLC, a Standard Flood Insurance Policy (SFIP) pursuant to the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001(a).  The policy period was from September 14, 2015,

through September 14, 2016.  The policy "insure[d] [Plaintiff] against direct physical loss by or from flood."  Joint Statement of Agreed Facts at ¶ 5.  The policy, however, imposed "restricted coverage on building items located in a 'basement,' which it define[d] as '[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.'"  Joint Statement of Agreed Facts at ¶ 6 (quoting Ex. 1, Art. II(B)(5)).

The policy also provided "'**[w]ithin 60 days after the loss**, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you.'" Joint Statement of Agreed Facts at ¶ 8 (quoting Ex. 1, Art. VII(J)(4)) (emphasis in original).  Finally, the policy provided:

> "If we reject your proof of loss in whole or in part you may:  (a) Accept such denial of your claim; (b) Exercise your rights under this policy; or (c) File an amended proof of loss as long as it is filed within 60 days of the date of the loss."

Joint Statement of Agreed Facts at ¶ 9 (quoting Ex. 1, Art. VII(M)(2)).

On December 11, 2015, the tidal waters of the Pacific Ocean overflowed and damaged the bottom level of hotel rooms at the Surfsand Resort in Cannon Beach, Oregon, which Plaintiff owned.

On December 22, 2015, Nationwide received its first notice of loss from Plaintiff.

"The claim was assigned to Colonial Claims Corporation who

assigned Jacob Valencia to serve as the independent adjuster."

Joint Statement of Agreed Facts at ¶ 13.  Valencia advised

Plaintiff:

> I am the eyes and ears of the insurance company.
> I cannot bind them.  I cannot tell you what amount
> of money you will be paid.  My job is to make
> assessment for the insurance company of the damage
> under the policy coverage based on my knowledge
> and experience.  My assessment will be subject to
> the insurance company's approval.
>
> * * *
>
> Your insurance policy is a written contract with
> stated terms and conditions.  Please comply with
> them and specifically we want to note you should
> file a Proof of Loss within sixty days from the
> date of your event.  Please see VII.  General
> Conditions, p12 of 19 for details on the proof of
> loss.

Joint Statement of Agreed Facts at ¶¶ 13-14.

On May 4, 2016, Plaintiff executed a signed and sworn Proof

of Loss in the amount of $98,765.08.  Joint Statement of Agreed

Facts at ¶ 17.

At some point before June 2, 2016, Plaintiff requested the

Federal Emergency Management Agency (FEMA) to grant Plaintiff a

waiver of the 60-day Proof of Loss deadline contained in the SFIP

with respect to Plaintiff's Proof of Loss in the amount of

$98,765.08.

On June 2, 2016, FEMA granted Plaintiff a limited waiver of

the 60-day Proof of Loss deadline as follows:

> Based on the information you submitted, your
> request for a waiver of the 60 day Proof of Loss

> policy provision is approved.  This limited waiver
> is for *only the amount of the loss and scope of*
> *the damages outlined in this request* and otherwise
> does not waive the proof of loss or any other
> requirement of the [SFIP] and makes no other
> comment because of lack of information.

Decl. of Brian C. Hickman, Ex. 4 at 2 (emphasis added).

On June 3, 2016, Nationwide sent Plaintiff a coverage-
determination letter enclosing a check for $98,765.08 and
advising Plaintiff that it was denying coverage for

> damages to the insured contents and all
> non-covered items located in the basement pursuant
> to the SFIP and quoted the relevant policy
> language.  The letter also explained the appeal
> process and provisions related to filing suit
> against Nationwide.

Joint Statement of Agreed Facts at ¶ 19.[1]

On July 14, 2016, Plaintiff appealed Nationwide's denial of
coverage for damage to the "non-covered items located in the
basement" to FEMA.  Specifically, Plaintiff disputed Nationwide's
determination that Plaintiff's property had a basement within the
meaning of the SFIP.

On October 19, 2016, FEMA advised Plaintiff that an
inspection by John Garner, an Oregon licensed engineer, was
"necessary because the elevations of the lowest floor and
adjacent grades of your building are unclear."  Hickman Decl.,
Ex. 7 at 1.

On December 29, 2016, Gardner issued his Engineering Report

---

[1] The June 3, 2016, letter is not in the record.

in which he concluded:

> It is my opinion that a reasonable interpretation
> of ground level should involve a natural drainage
> runoff. Simply considered, if a portion of a
> building would accumulate water in rains unless
> water is pumped or drained away, it is reasonably
> below ground level. Thus, if all areas of the
> floor are below ground level on all sides, the
> floor would hold water unless it were physically
> drained through plumbing or storm drains.
> Conversely, if an area of the floor is above
> ground level, then it would not hold water and
> water would drain away naturally.

> * * *

> In this particular case, the lower floor units are
> blocked from any natural drainage by the grassy
> area between them and the beach. The only way
> runoff can drain away is via French drains on the
> patios. The lower level below ground level on all
> sides, and the nearest lower ground is more than
> 25 feet away, outside the sea wall. The grassy
> area and sea wall block any natural positive
> drainage away from the interior, thus it is
> reasonable to conclude that the interior units are
> below ground level on all sides.

> Based upon a review of the available data, it is
> my opinion that the lower floor of the Surfsand
> Resort Beachfront Building is below ground level
> on all sides and thus does [in] fact meet the
> definition of a basement as denied in the Standard
> Flood Insurance Policy. This floor should be
> considered a basement for policy purposes,
> including Units 1101-1112, the hallway, and the
> storage area.

Decl. of James Guse, Ex. 7 at 6-7.

On March 23, 2017, Nationwide advised Plaintiff that it had

reviewed Gardner's Report and that it was "upholding our denial

of non-covered items in a basement as indicated in our letter of

June 3, 2016." Guse Decl., Ex. 8 at 1.

6 – OPINION AND ORDER

On June 2, 2017, Plaintiff filed an action in this Court against Nationwide and Harleysville asserting claims for breach of insurance contract and negligence *per se*. Plaintiff seeks damages in the amount of $396,234.92, "which represents the amount of the covered loss denied by Defendants"; seeks attorneys' fees; and requests a jury trial.

On August 21, 2017, Defendants filed a Motion to Dismiss Count II of Plaintiff's Complaint and a Motion to Strike Jury Demand in which they sought an order dismissing Plaintiff's claim for negligence *per se*, request for attorneys' fees, and demand for a jury trial.

On October 16, 2017, the Court issued an Opinion and Order in which it granted Defendants' Motion to Dismiss and Motion to Strike Jury Demand.

On March 15, 2018, Plaintiff filed a Motion for Summary Judgment. On April 5, 2018, Defendants filed a Cross-Motion for Summary Judgment. The Court took the Motions under advisement on May 3, 2018.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R.

Civ. P. 56(a).  The moving party must show the absence of a genuine dispute as to a material fact.  *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary

judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


**DISCUSSION**

Plaintiff moves for summary judgment on the ground that there is not any genuine dispute of material fact that the lowest level of the Surfsand Resort is not a basement within the meaning of the SFIP.  According to Plaintiff, it is, therefore, entitled to coverage for damages in the amount of $396,234.92, "which represents the amount of the covered loss denied by Defendants."

Defendants, on the other hand, move for summary judgment on the ground that it paid Plaintiff $98,765.08, which is the amount of the only Proof of Loss that Plaintiff submitted to Defendants. Moreover, Plaintiff has never submitted a supplemental Proof of

Loss for the $396,234.92 that it now seeks in this action, and,

therefore, Plaintiff has not satisfied a condition precedent of

the SFIP.  Defendants also contend the lowest level of the

Surfsand Resort is a basement within the meaning of the policy,

and, therefore, Plaintiff's requested damages are not covered

under the policy.

## I.    National Flood Insurance Program

Congress enacted the NFIA in 1968 in response to the fact

that flood disasters were creating personal hardships and

economic distress that was "increasing [the] burden on the

Nation's resources" and the exposure to flood losses was

"growing."  42 U.S.C. § 4001(a).  The NFIA created the National

Flood Insurance Program (NFIP) under the administration of FEMA

to "mak[e] flood insurance coverage available on reasonable terms

and conditions."  *Id.*  *See also* 42 U.S.C. § 4011.  Flood

insurance under the NFIP is sold to qualified applicants either

directly by FEMA or by private insurance companies known as

"write-your-own" (WYO) Companies.  44 C.F.R. § 62.23.  A WYO

Company enters into a standardized agreement with FEMA that

authorizes the WYO Company to issue flood insurance in its own

name and assigns the WYO Company the responsibility for "the

adjustment, settlement, payment and defense of all claims arising

from policies of flood insurance it issues under the Program."

44 C.F.R. § 62.23(d).  Nevertheless, the ultimate responsibility

for paying all claims remains with FEMA.  *See* 42 U.S.C.

§ 4017(a).

The NFIA regulations specify the required terms and

conditions of policies written under the NFIP.  For example, the

SFIP must advise the insured that FEMA is providing insurance

"under the terms of the National Flood Insurance Act of 1968 and

its Amendments, and Title 44 of the Code of Federal Regulations."

44 C.F.R. pt. 61, app. A(1), art. I.  The SFIP also must identify

the scope of coverage, the exclusions, the deductions, and the

general conditions applicable to coverage, adjustment, and

payment.  The SFIP must also include the following provision:

> This policy and all disputes arising from the
> handling of any claim under the policy are
> governed exclusively by the flood insurance
> regulations issued by FEMA, the National Flood
> Insurance Act of 1968, as amended (42 U.S.C.
> § 4001, et seq.), and Federal common law.[2]

44 C.F.R. pt. 61, app. A(1), art. IX.  WYO Companies cannot waive

or vary the terms or conditions of the SFIP without the express,

written consent of the Federal Insurance Administrator.  44

C.F.R. § 61.13(d).

In addition, the SFIP also must include the following

conditions and limitations for filing actions for claims under

SFIPs and for disputes arising out of the handling of any claim

under an SFIP:

---

[2] The SFIP at issue included all of the required language
identified above.

11 - OPINION AND ORDER

> You may not sue us to recover money under this
> policy unless you have complied with all the
> requirements of the policy. . . .  This
> requirement applies to any claim that you may have
> under this policy and to any dispute that you
> may have arising out of the handling of any claim
> under the policy.

44 C.F.R. pt. 61, app. A(1), art. VII(R).  *See also* 42 U.S.C.

§ 4072; 44 C.F.R. § 62.22.

"In short, [SFIP], claims under [SFIPs], and disputes

relating to the handling of claims under [SFIPs] are highly

regulated." *Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 622-23

(4th Cir. 2017).  *See also Suopys v. Omaha Prop. & Cas.*, 404 F.3d

805, 809 (3d Cir. 2005)("Because any claim paid by a WYO Company

is a direct charge to the United States Treasury, strict

adherence to the conditions precedent to payment is required.")

(citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85

(1947); *Flick v. Liberty Mut.*, 205 F.3d 386 (9th Cir. 2000)

(strict compliance is applied to policies written by WYO

Companies under the NFIP because flood-loss claims are paid from

United States Treasury).

## II.  Plaintiff failed to satisfy a condition precedent of the SFIP.

As noted, Defendants move for summary judgment on the ground

that Plaintiff has never submitted a supplemental Proof of Loss

for the $396,234.92 that it now seeks in this action.  According

to Defendants, therefore, Plaintiff has not satisfied a condition

precedent of the SFIP, and, accordingly, Plaintiff may not bring

a claim for those damages.

It is undisputed that Plaintiff submitted to Defendants a Proof of Loss on May 4, 2016, asserting a claim for $98,765.08. As noted, however, the record does not reflect Plaintiff submitted any supplemental or additional Proof of Loss to Defendants for the $396,234.92 that it now seeks as damages.

The SFIP provides in relevant part:

> In case of a flood loss to insured property, *you must*:
>
>                \* \* \*
>
> 3.    Prepare an inventory of damage property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents.
>
> 4.    Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>
>                \* \* \*
>
>     f.    Specifications of damaged buildings and detailed repair estimates; [and]
>
>                \* \* \*
>
>     i.    The inventory of damaged property described in J.3 above.

Hickman Decl., Ex. 1 at Art VII(J)(4)(emphasis added). *See also* 44 C.F.R. § 61, App. A(2), Art. VII(J)(4)(same). The SFIP provides if the insurer rejects the Proof of Loss "in whole or in part," the insured "may":

a. Accept such denial of your claim;

b. Exercise your rights under this policy; or

c. File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

Hickman Decl., Ex. 1 at Art VII(M)(2).

The Ninth Circuit and other courts have held a timely signed and sworn Proof of Loss is a condition precedent to an insured obtaining benefits under an SFIP policy. *See Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 659-60 (9th Cir. 2002) (concluding the plaintiff failed to satisfy the condition precedent of the SFIP when he did not file a proof of loss). *See also Dickson v. Am. Bankers Ins. Co. of Fl.*, 739 F.3d 397, 399 (8th Cir. 2014)("[T]he proof of loss requirement is a regulatory limit on the disbursement of funds through a federal insurance program; as such 'it is to be strictly construed [for it] serves as a condition precedent to recovery under the SFIP.'" (quoting *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773 (8th Cir. 2013)); *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013) ("Given that it is the government's liability at stake in any suit against a WYO insurer, compliance with the proof-of-loss provision serves as a "condition[ ] precedent to a waiver by the federal government of its sovereign immunity.").

Although the Ninth Circuit has not addressed the issue, other courts have held an insured must submit an additional or

supplemental proof of loss as a condition precedent "to recover
an additional amount on a preexisting claim under a[n] SFIP."
*Cummings v. Fidelity Nat. Indem. Ins. Co.*, 636 F. App'x 221, 223–
24 (5th Cir. 2016). *See also Dickson*, 739 F.3d at 399 ("a signed
and sworn proof of loss claims only the amounts listed in those
forms, and the insured must timely file an additional proof of
loss to claim any additional amount of money."). As the Fifth
Circuit explained in *Cummings*,

> a policy of "'insurance issued pursuant to a
> federal program must be strictly construed and
> enforced.'" *Monistere*, 559 F.3d at 394 (quoting
> *Gowland*, 143 F.3d at 954). "Because insurance
> companies act as 'fiscal agents' of the government
> under the National Flood Insurance Program, all
> policy awards deplete federally allocated funds."
> *Id*. (quoting *In re Estate of Lee*, 812 F.2d 253,
> 256 (5th Cir. 1987)). Accordingly, "'not even the
> temptations of a hard case' will provide a basis
> for ordering recovery contrary to the terms of a
> regulation, for to do so would disregard 'the duty
> of all courts to observe the conditions defined by
> Congress for charging the public treasury.'" *Id*.
> (quoting *Forman v. Fed. Emergency Mgmt. Agency*,
> 138 F.3d 543, 545 (5th Cir. 1998)). *See generally
> Richmond Printing LLC v. Dir. Fed. Emergency Mgmt.
> Agency*, 72 F. App'x 92, 97 (5th Cir. 2003)(citing
> *Kerr v. FEMA*, 113 F.3d 884 (8th Cir. 1997))
> (finding that completion of the proof of loss is
> the insured's own responsibility and "any reliance
> on statements made by the adjuster that
> contradicted the terms of the SFIP was
> unreasonable as a matter of law; the insured had a
> duty to read the policy and acted unreasonably in
> relying on adjusters provided only as a
> 'courtesy'"); *see also Gowland*, 143 F.3d at 955
> (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S.
> 380, 385 (1947))("Requiring [insured parties] to
> turn square corners when dealing with the Treasury
> 'does not reflect a callous outlook. It merely
> expresses the duty of all courts to observe the

>conditions defined by Congress for charging the
>public treasury.'"").

636 F. App'x at 224.

Plaintiff does not dispute it failed to file a supplemental or additional proof of loss seeking the additional damages of $396,234.92 that it now seeks. Plaintiff, however, asserts it provided all "of the documentation regarding damaged areas . . . and its contents" to claims adjuster Jacob Valencia who "specifically excluded items that he considered to be in a basement." Decl. of Ted Stark at ¶ 4. Plaintiff points out that Valencia advised Plaintiff in February and April 2016 (before Plaintiff filed the May 2016 proof of loss) that "a Proof of Loss was only to act as a 'minimum' of items that are flood damaged. He further indicated that any 'covered, omitted or reasonable cost difference' could be addressed with a Claim for Additional Payment (CAP)." *Id*. Plaintiff argues Valencia was acting as Defendants' agent, and, therefore, Valencia's refusal to submit all of the damages either waived the requirement or absolved Plaintiff of the responsibility to submit a supplemental proof of loss as to the damages that Plaintiff now seeks. Arguments similar to those made by Plaintiff, however, have been rejected by various courts.

For example, the Eighth Circuit explained in *Dickson*:

>The SFIP defines the proof of loss as the
>insureds' signed and sworn "statement of the
>amount [they] are claiming under the policy."

44 C.F.R. pt. 61 app. A(1), art. VII(J)(4).
Independent insurance adjusters may assist the
insureds by providing or preparing this proof of
loss form, but the SFIP is clear that even with
such assistance the insureds must use their own
judgment concerning the amount of loss they claim.

* * *

Among the significant SFIP provisions concerning
the proof of loss requirement is a rule that "[i]n
completing the proof of loss, [the insureds] must
use [their] own judgment concerning the amount of
loss and justify that amount."  44 C.F.R. pt. 61
app. A(1), art. VII(J)(5).  While insurance
adjusters may assist with preparing the proof of
loss form, they do so as "a matter of courtesy
only" and insureds are ultimately responsible for
ensuring their claim is timely filed.  *Id.*, art.
VII(J)(7).  Thus as a matter of law, the
[plaintiffs] were the only parties responsible for
ensuring compliance with the proof of loss
requirement, including the determination of the
"amount of loss."

* * *

[T]he SFIP requires insureds to use their own
judgment to determine the amount of loss they
claim.  It was therefore solely the [plaintiffs']
own responsibility to file a timely proof of loss
for any amount they believed was covered by the
policy.

*Dickson*, 739 F.3d at 399-400.  Similarly, in *DaCosta* the court

noted

FEMA must provide express written consent . . . to
waive any of the requirements outlined in [an]
SFIP.  The SFIP's waiver provision states, "[t]his
policy cannot be changed nor can any of its
provisions be waived without the express written
consent of the Federal Insurance Administrator.
No action we take under the terms of this policy
constitutes a waiver of any of our rights."
44 C.F.R. pt. 61, App. a(1), Art. VII(D).

17 - OPINION AND ORDER

> The SFIP's stringent waiver provision reflects the
> fact that private insurers are "fiscal agents of
> the United States," 42 U.S.C. § 4071(a)(1), as
> opposed to general agents. *See McGair*, 693 F.3d
> at 96. Thus, consistent with their duty to
> strictly enforce the SFIP, private insurance
> companies can "[vary] the terms of a policy only
> with FEMA's express written consent." *Jacobson*,
> 672 F.3d at 175. . . . [T]he SFIP "explicitly
> preclude[s] oral waiver or waiver by conduct.

730 F.3d at 87.

In *Dickson* the court also rejected the plaintiffs' assertion that their claims adjuster engaged in misconduct when it inaccurately advised them about the amount of their proof of loss:

> The adjuster explained . . . the [plaintiffs]
> could "always submit a supplemental claim for
> additional damages." The [plaintiffs] were thus
> alerted to the potential need for filing a
> supplemental claim. . . . Moreover, the SFIP
> provides clear directives that the [plaintiffs]
> needed to file a proof of loss for their claim
> . . . . The responsibility to ensure compliance
> with the prerequisites for filing suit lay with
> the [plaintiffs].

*Id.* at 401.

This Court adopts the reasoning of *Cummings, DaCosta,* and *Dickson* and concludes Plaintiff's submission of an additional or supplemental proof of loss is a condition precedent to recover an additional amount on a preexisting claim under an SFIP. The Court also concludes Valencia's alleged refusal to submit a claim for damages related to the part of Plaintiff's property that he believed to be a basement is insufficient to waive the

supplemental proof-of-loss requirement because Plaintiff had an
independent duty to determine the amount of its own loss; FEMA
did not waive the SFIP requirement to submit a supplemental proof
of loss; and Valencia, in fact, informed Plaintiff that "any
covered, omitted or reasonable cost difference could be addressed
with a Claim for Additional Payment."  Thus, on this record the
Court concludes Plaintiff failed to comply with the condition
precedent for seeking additional damages within the time required
by the SFIP and FEMA.  The Court, therefore, grants that portion
of Defendants' Motion for Summary Judgment based on Plaintiff's
failure to file a supplemental proof of loss.

In addition, because the Court has concluded Plaintiff
failed to satisfy a condition precedent before bringing this
action, the Court does not have the authority to decide whether
the lower level of Plaintiff's property is a basement within the
meaning of the SFIP, and, therefore, the Court does not express
any opinion on that issue.  Accordingly, the Court denies
Plaintiff's Motion for Summary Judgment.


**CONCLUSION**

For these reasons, the Court **DENIES** Plaintiff's Motion (#32)
for Summary Judgment, **GRANTS** Defendants' Cross-Motion (#36) for

Summary Judgment, and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 28th day of June, 2018.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge